**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
In re:

FUN BOWL VACATIONS, INC.,

        Debtor.

--------------------------------------------------------------x
MARIANNE T. O'TOOLE, as Trustee of the Estate
of Fun Bowl Vacations, Inc.,

        Plaintiff,

      -against-

LINDA HEINEMANN, MYRNA RABOY, and
JOSEPHINE MUNDY,

        Defendants.

--------------------------------------------------------------x

Chapter 7

Case No. 21-22521 (KYP)

Adv. Pro. No. 23-07026 (KYP)

**MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART**
**THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

**APPEARANCES:**

WILLIAM F. MACREERY, ESQ.
*Attorney for Trustee*
7 Granite Springs Road
Granite Springs, NY 10527
By:    William F. Macreery, Esq.
        Of Counsel

KOPLEN LAW FIRM
*Attorney for Defendants*
14 South Main Street, Suite 4
New City, NY 10956
By:    Michael A. Koplen, Esq.
        Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## **INTRODUCTION**

Plaintiff Marianne T. O'Toole, as Chapter 7 trustee ("Trustee") of the estate of Fun Bowl Vacations, Inc. ("Debtor") has moved for summary judgment ("Motion") on her claims to avoid and recover certain pre-petition transfers made to, or for the benefit of, Defendants Linda Heinemann, Myrna Raboy, and Josephine Mundy (collectively, the "Defendants") as constructive fraudulent transfers or preferences.[1]  The Defendants oppose the Motion.[2]  As outlined below, the Motion is GRANTED with respect to the 2021 Transfers ($45,000) and one-half of the 2020 Transfers ($22,500), and DENIED with respect to the other half of the 2020 Transfers ($22,500) (capitalized terms defined below).  The Trustee's request to impose joint and several liability on the Defendants is DENIED.

## **JURISDICTION**

The Court has jurisdiction over the claims asserted in this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring to the Bankruptcy Judges of the Southern District of New York bankruptcy cases filed in this District as well as proceedings arising under title 11 or arising in or related to a bankruptcy case.  The

---

[1]    *See Memorandum of Law in Support of the Trustee's Motion for Summary Judgment*, dated July 9, 2024 ("Trustee Brief") (ECF Doc. #8).  *See also Reply Memorandum of Law in Further Support of the Trustee's Motion for Summary Judgment*, dated Nov. 18, 2024 ("Trustee Reply") (ECF Doc. # 24).  "ECF Doc. # _" refers to documents filed on the electronic docket of this adversary proceeding.  "ECF Main Case Doc. # _" refers to documents filed on the electronic docket of the Chapter 7 bankruptcy case, *In re Fun Bowl Vacations, Inc.*, Case No. 21-22521 (Bankr. S.D.N.Y.).  "ECF p. _" refers to the page number imprinted across the top of documents filed on the Court's electronic filing system.

[2]    *See Memorandum of Law in Opposition to the Chapter 7 Trustee's Motion for Summary Judgment*, dated Sept. 27, 2024 ("Defendants Brief") (ECF Doc. # 18-1).

claims asserted in this action are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F) and (H).

## BACKGROUND[3]

### A.    The Debtor's Pre-Petition Business

Prior to the bankruptcy filing, the Debtor engaged in the business of arranging and booking travel and hotel reservations for bowling leagues.  (Trustee Fact Statement ¶ 5.)  The Debtor had contracts with eighteen bowling leagues under which the Debtor provided the winning bowlers in the leagues with vacations including airfare, hotel, and other accommodations.  (*Deposition of Josephine Mundy*, dated Oct. 25, 2022 ("Mundy Depo.") at 14:21-16:17; *Deposition of Myrna Raboy*, dated Oct. 25, 2022 ("Raboy Depo.") at 12:7-13:23; *Deposition of Linda Heinemann*, dated Oct. 25, 2022 ("Heinemann Depo.") at 7:15-8:8.)[4]  The contracts generally required that the participating bowling league make four installment payments over the course of the year to the Debtor based on the number of bowlers in the league.  The Debtor would provide the vacation accommodations to the winning bowlers upon completion of the

---

[3]    The background is culled from the *Plaintiff's Statement of Undisputed Facts Under Local Bankruptcy Rule 7056-1*, dated July 9, 2024 ("Trustee Fact Statement") (ECF Doc. # 8-1), the exhibits annexed to the *Affirmation of William F. Macreery in Support of Plaintiff's Motion for Summary Judgment*, dated July 9, 2024 ("Macreery Affirmation") (ECF Doc. # 8-2), the *Defendants' Reply to Plaintiff's Statement of Undisputed Facts*, filed on September 29, 2024 ("Defendants Fact Statement") (ECF Doc. # 18), and matters for which the Court may take judicial notice.  The fact statements were submitted pursuant to Local Bankruptcy Rule 7056-1 requiring a summary judgment movant and opponent to submit factual statements with citations to the record.  *See generally* Bankr. S.D.N.Y. R. 7056-1.  The Defendants Fact Statement did not include record citations; instead, it was framed as a statement of Defendant Josephine Mundy, which was "[s]ubscribed and sworn/affirmed" and signed by Ms. Mundy, as well as the other two Defendants, before notaries public.  The Court will therefore treat the Defendants Fact Statement as both a responsive document under Local Bankruptcy Rule 7056-1 as well as an affidavit of Ms. Mundy submitted in opposition to the Motion.  *See* Fed. R. Civ. P. 56(c)(1)(A) (providing, among other things, that a party may cite to affidavits or declarations including those made solely for purposes of the summary judgment motion).

[4]    Copies of the Mundy Depo., Raboy Depo., and Heinemann Depo. are attached to the Macreery Affirmation as Exhibits 3, 4, and 5, respectively.

installment payments.  (*See* Macreery Affirmation, Ex. 7 (Debtor's contracts with bowling leagues).)

Each of the Defendants held an equal one-third ownership interest in the Debtor, and each Defendant served as an officer with Ms. Heinemann serving as President, Ms. Raboy serving as Vice President, and Ms. Mundy serving as Secretary and Treasurer. (Mundy Depo. at 9:18-10:12; Raboy Depo. at 6:7-7:15; Heinemann Depo. at 6:4-7:14.)

The Debtor's operations were upended by the onset of the COVID-19 pandemic. The pandemic severely impeded the Debtor's ability to book vacations as required under the contracts with bowling leagues, and some of the bowling leagues ultimately disbanded.  (Mundy Depo. at 14:15-20 (Q: "Is there any single specific reason that you can point to that caused the financial [reversal] for the company and caused it to file for bankruptcy?"  A: "Covid, we were a travel company and the cruise lines shuttered, the hotels shuttered, the airlines shuttered and the bowling [alleys] shuttered."); *id.* at 53:13-15 ("So, there was no way to continue the business between Covid and with some of the leagues disbanding we couldn't continue the business."); Heinemann Depo. at 31:21-32:3.)

Between March 2021 and June 2021, several members of bowling leagues filed formal complaints with the Office of the Attorney General of the State of New York seeking the return of money paid to the Debtor for vacations that were never booked. On August 10, 2021, the New York Attorney General's office demanded that the Debtor refund the amounts owed to the complainants, and the Debtor provided refunds totaling $10,240.00 on or about August 15, 2021.  (Trustee Fact Statement ¶ 20; *see also Complaint*, dated July 24, 2023 ("Complaint") ¶¶ 21-23 (ECF Doc. # 1); *Answer to Complaint*, dated Aug. 2, 2023 ("Answer") at 2 (ECF Main Case Doc. # 23).)

**B.     Pre-Petition Transfers to the Defendants**

**1.     The 2020 Transfers**

During the period between April 1 and November 30, 2020, the Debtor made ten transfers of $1,500 to, or on behalf of, each Defendant from the Debtor's bank account at JPMorgan Chase Bank (collectively, the "2020 Transfers").  (Trustee Fact Statement ¶ 8; Macreery Affirmation, Ex. 9 (Debtor's Chase Bank account statements); *see also* Trustee Brief at 4 (illustrative chart showing transfers to Defendants).)[5]  The 2020 Transfers were paid to the Defendants on a monthly basis, usually at the beginning of the month, but sometimes at the end of the prior month.  The only exceptions were the 2020 Transfers the Debtor paid to taxing authorities on November 16, 2020 on behalf of each Defendant (one check for $1,000 to the IRS and a second check for $500 to the New York State Department of Taxation and Finance).  The 2020 Transfers comprising a total amount of $45,000 ($15,000 for each Defendant) are summarized as follows:

| DATE | CHECK # | RECIPIENT | AMOUNT |
|------|---------|-----------|--------|
| 4/1/2020 | 5050 | Heinemann | $1,500 |
| 4/1/2020 | 5049 | Raboy | $1,500 |
| 4/1/2020 | 5051 | Mundy | $1,500 |
| 5/1/2020 | 5058 | Heinemann | $1,500 |
| 5/1/2020 | 5060 | Raboy | $1,500 |
| 5/1/2020 | 5059 | Mundy | $1,500 |
| 6/1/2020 | 5067 | Heinemann | $1,500 |
| 6/1/2020 | 5066 | Raboy | $1,500 |
| 6/1/2020 | 5068 | Mundy | $1,500 |
| 7/1/2020 | 5073 | Heinemann | $1,500 |
| 7/1/2020 | 5075 | Raboy | $1,500 |

---

[5]     The Debtor actually wrote eleven checks to, or for the benefit of, each Defendant, but the Trustee appears to be grouping together the checks to the IRS and the New York State Department of Taxation and Finance because those checks were issued to the taxing authorities on behalf of the Defendants on the same day and the combined amount of the checks was $1,500.

| | | | |
|---|---|---|---|
| 7/1/2020 | 5074 | Mundy | $1,500 |
| 7/31/2020 | 5080 | Heinemann | $1,500 |
| 7/31/2020 | 5082 | Raboy | $1,500 |
| 7/31/2020 | 5081 | Mundy | $1,500 |
| 9/1/2020 | 5090 | Heinemann | $1,500 |
| 9/1/2020 | 5092 | Raboy | $1,500 |
| 9/1/2020 | 5091 | Mundy | $1,500 |
| 10/1/2020 | 5096 | Heinemann | $1,500 |
| 10/1/2020 | 5098 | Raboy | $1,500 |
| 10/1/2020 | 5097 | Mundy | $1,500 |
| 11/1/2020 | 5109 | Heinemann | $1,500 |
| 11/1/2020 | 5108 | Raboy | $1,500 |
| 11/1/2020 | 5110 | Mundy | $1,500 |
| 11/16/2020 | 5118 | IRS f/b/o Heinemann | $1,000 |
| 11/16/2020 | 5116 | IRS f/b/o Raboy | $1,000 |
| 11/16/2020 | 5120 | IRS f/b/o Mundy | $1,000 |
| 11/16/2020 | 5119 | NYSDT&F f/b/o Heinemann | $500 |
| 11/16/2020 | 5117 | NYSDT&F f/b/o Raboy | $500 |
| 11/16/2020 | 5121 | NYSDT&F f/b/o Mundy | $500 |
| 11/30/2020 | 5127 | Heinemann | $1,500 |
| 11/30/2020 | 5129 | Raboy | $1,500 |
| 11/30/2020 | 5128 | Mundy | $1,500 |
| **TOTAL 2020 TRANSFERS:** | | | **$45,000** |

As stated, each Defendant generally received $1,500 each month from the Debtor, which totals $18,000 for the year.[6]  However, in its 2020 tax return, the Debtor listed that the salary to each Defendant for that year was $9,000.  (*See* Macreery Affirmation, Ex. 12 at ECF p. 17 (Debtor's 2020 tax return).)  On this basis, the Trustee asserts that only 50% of the 2020 Transfers should be attributed to wages and the

---

[6]    The Trustee does not seek avoidance of the $1,500 payments the Defendants presumably received between January and March 2020.

remainder should be considered distributions on account of the Defendants' equity

holdings.  (Trustee Fact Statement ¶ 9.)

### 2. The 2021 Transfers

In January 2021, each Defendant received two transfers in the combined amount

of $15,000 from the Debtor's Chase Bank account (the "2021 Transfers").  (Trustee Fact

Statement ¶ 10; Macreery Affirmation, Ex. 9 at ECF pp. 39-42 (Debtor's January 2021

Chase Bank account statement).)  None of the Defendants included the receipt of the

2021 Transfers as part of their income on their 2021 personal tax returns.  (Trustee Fact

Statement ¶ 14.)  The 2021 Transfers comprising a total amount of $45,000 ($15,000

for each Defendant) are summarized as follows:

| DATE | CHECK # | RECIPIENT | AMOUNT |
|---|---|---|---|
| 1/2/2021 | 5142 | Heinemann | $7,500 |
| 1/2/2021 | 5144 | Raboy | $7,500 |
| 1/2/2021 | 5143 | Mundy | $7,500 |
| 1/4/2021 | 5145 | Heinemann | $7,500 |
| 1/4/2021 | 5147 | Raboy | $7,500 |
| 1/4/2021 | 5146 | Mundy | $7,500 |
| | | **TOTAL 2021 TRANSFERS:** | **$45,000** |

## C. This Adversary Proceeding and the Instant Motion

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on

September 13, 2021.  (ECF Main Case Doc. # 1.)  Marianne O'Toole was appointed the

interim Chapter 7 trustee and became the permanent Trustee at the initial meeting of

creditors.  (Trustee Fact Statement ¶ 2.)

On July 24, 2023, the Trustee commenced this adversary proceeding against the

Defendants.  The Complaint included three Counts: (i) avoidance and recovery of the

2020 Transfers and 2021 Transfers (collectively, the "Transfers") as intentional

fraudulent transfers under sections 548(a)(1)(A) and 550(a) of the Bankruptcy Code and section 273 of the New York Uniform Voidable Transactions Act, (ii) avoidance and recovery of the Transfers as constructive fraudulent transfers under sections 548(a)(1)(B) and 550(a) of the Bankruptcy Code and sections 273 and 274 of the New York Uniform Voidable Transactions Act,[7] and (iii) avoidance and recovery of the 2021 Transfers as preferences under sections 547 and 550(a) of the Bankruptcy Code. (Complaint ¶¶ 25-43.)

By the instant Motion, the Trustee seeks summary judgment on Counts II and III. She asserts that the Transfers were constructive fraudulent transfers because they were made to, or on behalf of, the Defendants, without fair consideration, at a time when the Debtor was insolvent. (Trustee Brief at 10-16.) Alternatively, the Trustee argues that the Transfers made within one year of the petition date are avoidable preferences. (*Id.* at 17-18.) Last, the Trustee contends that the Defendants should be held jointly and severally liable for the judgment under New York law. (*Id.* at 18-19.)

The Defendants assert that the Transfers are not recoverable primarily because they were salary payments. (Defendants Brief at 5-10.) They also assert that wages previously earned, but not paid, should be deemed to have been held in trust by the Debtor for the benefit of the Defendants. (*Id.* at 12-13.)

The Court heard oral argument on November 21, 2024 and took the matter under advisement.

---

[7] The Complaint also sought avoidance and recovery of certain life insurance premiums paid by the Debtor on behalf of the Defendants as intentional and constructive fraudulent transfers (*see* Complaint ¶¶ 29, 36), but the recovery of those payments was not included in the Motion.

## DISCUSSION

### A.      Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable hereto

pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary

judgment is proper "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a).  The movant bears the burden of establishing that no genuine issue of material

fact exists.  *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting

*Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)).  "A fact is material

if it might affect the outcome of the suit under the governing law, and an issue of fact is

genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir.

2012) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black Regulating Dist.*,

673 F.3d 84, 94 (2d Cir. 2012)).

Once the movant has carried its initial burden, "the nonmovant must set forth

specific facts showing that there is a genuine issue for trial." *Bustamante*, 100 F.4th at

432 (citation omitted).  When deciding whether a genuine dispute exists as to a material

fact, all ambiguities must be resolved, and all reasonable inferences must be drawn, in

favor of the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).  However,

"[c]onclusory allegations, conjecture, and speculation are insufficient to create a

genuine issue of fact." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d

Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)) (alteration

omitted); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986) (When the moving party has carried its burden, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts."). If

"the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S.

at 587 (citation and internal quotation marks omitted).

## B.    The Constructive Fraudulent Transfer Claims

Count II seeks avoidance and recovery of the Transfers as constructive fraudulent

transfers under the Bankruptcy Code and New York law.

Pursuant to section 548(a)(1)(B) of the Bankruptcy Code:

(a) (1) The trustee may avoid any transfer . . . of an interest of the debtor in
property . . . that was made . . . within 2 years before the date of the filing
of the petition, if the debtor voluntarily or involuntarily . . .

> (B) (i) received less than a reasonably equivalent value in exchange
> for such transfer . . . and

> > (ii) (I) was insolvent on the date that such transfer was
> > made . . . or became insolvent as a result of such transfer . . . .

11 U.S.C. § 548(a)(1)(B).

Under section 544(b) of the Bankruptcy Code, the Trustee may assert a claim

under state fraudulent transfer law if there is an unsecured creditor who could pursue

the action.[8]  In that vein, the Trustee cites (*see* Trustee Brief at 9) section 274 of the New

York Debtor and Creditor Law, which provides as follows:

A transfer made . . . by a debtor is voidable as to a creditor whose claim
arose before the transfer was made . . . if the debtor made the transfer . . .
without receiving a reasonably equivalent value in exchange for the
transfer . . . and the debtor was insolvent at the time or the debtor became
insolvent as a result of the transfer . . . .

---

[8]    Section 544(b)(1) of the Bankruptcy Code provides that "the trustee may avoid any transfer of an
interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an
unsecured claim that is allowable under section 502 of this title or that is not allowable only under section
502(e) of this title."

10

N.Y. Debt. & Cred. Law ("N.Y. DCL") § 274(a) (McKinney 2024).[9]  An action asserting a

claim under N.Y. DCL § 274(a) must be commenced no later than four years after the

transfer was made.  N.Y. DCL § 278(b).

   To the extent a transfer is avoided under section 544 or 548 of the Bankruptcy

Code, the Trustee may recover, "for the benefit of the estate, the property transferred,

or, if the court so orders, the value of such property, from . . . the initial transferee of

such transfer or the entity for whose benefit such transfer was made."  11 U.S.C. §

550(a)(1).

   Here, the undisputed facts establish that the Defendants received the Transfers

from the Debtor's JPMorgan Chase Bank account (or were the intended beneficiaries in

the case of the 2020 Transfers to the taxing authorities) within the two-year reach-back

---

[9]    The Trustee invokes N.Y. DCL § 274(a) to avoid all of the Transfers except the 2020 Transfers
that occurred on April 1, 2020.  That is because section 274(a) was enacted as part of the Uniform
Voidable Transaction Act, which applies to transactions that occurred on or after April 4, 2020.  With
respect to the April 1, 2020 transfers, the Trustee relies on the prior iteration of New York's constructive
fraudulent transfer statute, which provides:

> Every conveyance made . . . by a person who is or will be thereby rendered insolvent is
> fraudulent as to creditors without regard to his actual intent if the conveyance is made . . .
> without fair consideration.

N.Y. Debt. & Cred. Law § 273 (repealed 2019).  The current iteration of the New York constructive
fraudulent transfer statute more closely tracks section 548(a)(1)(B) of the Bankruptcy Code because it
focuses on whether "reasonably equivalent value" was given in exchange for the transfer, rather than an
analysis of "fair consideration," which was the focus of the prior New York statute.  Nonetheless, the
analyses under the current and prior New York statutes are sufficiently similar such that the Court need
not perform a separate analysis solely for the April 1, 2020 transfers.  *See Makmudova v. Cohen*, No.
521869/2016, 2024 WL 3361238, at *7 (N.Y. Sup. Ct. July 10, 2024) ("The NYDCL, with the adoption of
the UVTA, did not substantially change existing New York law . . . ."); *cf. Official Comm. of Unsecured
Creditors v. Leucadia Nat'l Corp.* (*In re Vivaro Corp.*), 524 B.R. 536, 550 (Bankr. S.D.N.Y. 2015) ("Courts
use the term 'fair consideration' interchangeably with 'reasonably equivalent value,' relevant in
Bankruptcy Code section 548 fraudulent transfer claims, when examining constructive fraud claims.")
(citation omitted); *Picard v. Madoff* (*In re Bernard L. Madoff Inv. Sec. LLC*), 458 B.R. 87, 110 (Bankr.
S.D.N.Y. 2011) ("It has been found, 'reasonably equivalent value' in Section 548(a)(1)(B), and 'fair
consideration' in the NYDCL have the same fundamental meaning.") (citation, internal quotation marks,
and alterations omitted).

period set forth in 11 U.S.C. § 548(a)(1) and the four-year statute of limitations set forth

in N.Y. DCL § 278(b).  The Court addresses whether reasonably equivalent value was

given in exchange for the Transfers as well as the Debtor's insolvency in the sections that

follow.

### 1.    Reasonably Equivalent Value

Both 11 U.S.C. § 548(a)(1)(B) and N.Y. DCL § 274(a) focus on whether the debtor

received "reasonably equivalent value" in exchange for the transfer.  To decide whether a

transfer is made for "reasonably equivalent value," courts consider "whether the debtor

has received value that is substantially comparable to the worth of the transferred

property."  *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 548 (1994).  The Court "need not

strive for mathematical precision" but "must keep the equitable purposes of the statute

firmly in mind, recognizing that any significant disparity between the value received and

the obligation assumed . . . will have significantly harmed the innocent creditors."

*Kirschner v. Citigroup Glob. Mkts. Inc.* (*In re Tribune Co. Fraudulent Conv. Litig.*), 10

F.4th 147, 172 (2d Cir. 2021) (quoting *Rubin v. Mrfs. Hanover Tr. Co.*, 661 F.2d 979,

994 (2d Cir. 1981)), *cert. denied sub nom. Kirschner v. FitzSimons*, 142 S. Ct. 1128

(2022).

Generally, distributions to equity holders on account of their equity holdings are

not made in exchange for "reasonably equivalent value;" this Court has previously

explained:

> An owner's rights to receive returns are features of equity ownership that
> are junior to the rights of creditors.  If the business had been solvent then
> Ms. Serafis might have been entitled to dividend payments with respect to
> her equity position, but by definition dividend payments are payments
> that are made in respect of equity investments; they are not made in
> exchange for property or in payment of antecedent debts, and therefore

they are not made in exchange for "fair consideration" or "reasonably
equivalent value."

*Graham v. Serafis* (*In re Vill. Red Rest. Corp.*), Adv. P. Nos. 20-01065 & 20-01066

(MEW), 2021 WL 3889793, at *10 (Bankr. S.D.N.Y. Aug. 31, 2021); *accord Jacobs v.*

*Altorelli* (*In re Dewey & LeBoeuf LLP*), 518 B.R. 766, 789 (Bankr. S.D.N.Y. 2014)

("Equity distributions are not ordinarily considered transfers made on account of an

antecedent debt, and in turn, are not considered to be made in exchange for 'reasonably

equivalent value.'").

The Trustee contends that the 2021 Transfers ($45,000) and one-half of the

2020 Transfers ($22,500) were distributions on account of the Defendants' equity

interests, and thus not paid in exchange for reasonably equivalent value.  (Trustee Reply

at 7-9.)  The Defendants respond that those distributions constituted payments of

previously earned wages, but their assertions lack evidentiary support.  The Defendants

state that they had paid income taxes for these amounts (*see* Defendants Fact Statement

¶¶ 7, 11, and 14), but have not produced any individual tax return for any year in which

they purportedly reported (and paid taxes on) such income, any corporate tax return of

the Debtor showing that the Defendants earned any such income, or any other evidence

showing prior payment of income taxes for these transfers.  The Defendants assert that

they relied on the advice of their accountant in connection with this arrangement (*see*

*id.* ¶¶ 9, 11, and 14), but have provided neither an affidavit of such accountant

confirming the existence of any deferred compensation plan nor any statute or

regulation the accountant relied upon when advising the Defendants of this

arrangement.

The Defendants contend that these amounts "were left in the corporate account as a type of trust in favor of the [D]efendants." (*Id.* ¶ 7; *see also id.* ¶ 14.) But, there is no evidence that a trust was created or that any amount was held in a separate trust account; rather, the Transfers at issue were all made from the same Chase Bank account held by the Debtor. The Defendants cite (*see* Defendants Brief at 12-13) *Begier v. United States Internal Revenue Serv.*, 878 F.2d 762 (3d Cir. 1989), *aff'd sub nom. Begier v. Internal Revenue Serv.*, 496 U.S. 53 (1990), but that case is distinguishable. *Begier* stands for the proposition that the pre-petition payment of taxes to the IRS from an employer's general accounts could not be avoided as a preference because funds used to pay those taxes were not "property of the estate" within the meaning of 11 U.S.C. § 541(a)(1). *Begier*, 496 U.S. at 59-67. The Supreme Court's ruling was based on specific provisions of the Internal Revenue Code providing that certain taxes withheld by an employer are held in trust for the United States. *Id.* at 60-62. Here, in contrast, there is no applicable statute providing for the creation of a trust or any evidence that any trust was created.

Even if the Court assumed that the Defendants left wages they had previously earned with the Debtor, it could not conclude that the 2021 Transfers and half of the 2020 Transfers constituted deferred payments of those wages. Without any evidence of a deferred compensation plan, the Defendants' refusal to take compensation when earned more closely resembles a capital contribution by equity holders to ensure the financial health of the Debtor's business. (*Accord* Defendants Brief at 1 ("Instead, [the Defendants] left the money in the corporate account where it was held in trust for them and *provided a cushion for the corporate coffers in the event it might be needed for corporate expenses.*") (emphasis added).) A recipient of a fraudulent transfer may not

14

defend against such claim by asserting that a company was merely returning a prior capital contribution to her.  *Hurwitz v. Fung Holdings (1937) Ltd.* (*In re GBG USA Inc.*), Case No. 21-11369 (MEW), 2024 WL 5114996, at *16 (Bankr. S.D.N.Y. Dec. 15, 2024) ("The whole point of a capital contribution is that it provides resources to which creditors (not equity holders) have first rights.  Once a capital contribution is made, that contribution has inured to the benefit of the entity's creditors, and as equity capital it cannot be reclaimed . . . if by doing so would be in violation of creditors' rights under fraudulent transfer laws.  If the Defendants were right, then any [dividend payment recipient] could assert, in defense to a fraudulent transfer claim, that the [recipient] was merely reclaiming some of the capital contributions that it had previously made.  I know of no authority for the proposition that such a defense can be asserted, and the whole notion defies common sense.").

Ultimately, the notion that the 2021 Transfers and half of the 2020 Transfers were payments of previously earned income is devoid of evidentiary support and based solely on the Defendants' self-serving and conclusory statements.  *Kobrand Corp. v. Abadia Retuerta S.A.*, No. 12 Civ. 154 (KBF), 2012 WL 5851139, at *4 (S.D.N.Y. Nov. 19, 2012) ("[S]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment.").

The Defendants stand on firmer ground on the other half of the 2020 Transfers ($22,500).  As stated, the Trustee concedes that half of the 2020 Transfers constituted salary payments as set forth in the Debtor's 2020 tax returns.  The payment of salary is presumed to be made in exchange for "reasonably equivalent value" unless the payments were in bad faith or excessive in light of the employment responsibilities. *Sama v. Mullaney* (*In re Wonderwork, Inc.*), 611 B.R. 169, 208 (Bankr. S.D.N.Y. 2020)

(citing *Pryor v. Tiffen* (*In re TC Liquidations LLC*), 463 B.R. 257, 268 (Bankr. E.D.N.Y. 2011)).  Nonetheless, the Trustee argues that the continuation of the salary payments to the Defendants between April and November 2020 were not for reasonably equivalent value because the Debtor had ceased operations due to the pandemic.  (Trustee Reply at 11-12.)

The Defendants have established that there is a genuine dispute of material fact with respect to the salary transfers.  They maintain that during the relevant period, they worked "five days a week, eight hours a day" in an effort to keep the business afloat. (Defendants Fact Statement ¶ 15; *accord* Heinemann Depo. at 30:3-14 ("I mean, we did a lot of work cancelling trips, eight hours on the phone trying to get through to companies.").)  According to the Defendants, the work included: (a) answering calls and responding to emails, (b) canceling bookings with airlines, hotels, and cruise companies, (c) trying to book and re-book trips for clients, (d) pay business expenses, (e) communicating with vendors and asking when their operations would return to normal, (f) managing client reservations, and (g) maintaining daily bookkeeping duties. (Defendants Fact Statement ¶ 15.)  Whether the Defendants provided reasonably equivalent value in exchange for the 2020 Transfers constituting salary payments is an issue for trial.

## 2.   Insolvency

Claims under Bankruptcy Code § 548(a)(1)(B) and N.Y. DCL § 274(a) require that the debtor be insolvent at the time of the transfer or became insolvent as a result of the transfer.  The Bankruptcy Code provides that an entity is "insolvent" when the "sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32).  Applicable New York law has a substantially similar definition of

16

insolvency.  N.Y. DCL § 271(a) ("A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets.").

The Debtor's primary assets during the relevant period were the Debtor's two bank accounts at JPMorgan Chase Bank.[10]  (Trustee Fact Statement ¶ 16.)  The monthly statements for the account ending in 2565 had an average balance of approximately $108,000 throughout 2020 that dropped to approximately $50,000 on December 30, 2020.  (*See* Macreery Affirmation, Ex. 10 (bank account statements).)  The monthly statements for the account ending in 1052 show balances as high approximately $54,000 in April 2020, which then diminished through the end of 2020. (*See id.*, Ex. 9 (bank account statements).)  From April 2020 onwards, the combined balance never exceeded $162,000; the Debtor's assets were generally under $160,000 when the 2020 Transfers were made and a much lower amount when the 2021 Transfers were made.

The Debtor's primary liabilities were generated from the installment payments made by the participating bowling leagues.  To the extent amounts paid were not used to book vacations, the leagues retained dollar-for-dollar "credits" which could presumably be used for booking future vacations.  The credits retained by each of the eighteen leagues between 2017 and 2020 are set forth on the Debtor's handwritten ledger, a copy of which is attached as Exhibit 6 of the Macreery Affirmation.  That ledger shows that, by 2020, the leagues had accumulated a combined total of $479,835 in credits with the Debtor.  It is unlikely that the amount of accumulated credit owed to the leagues

---

[10]    The Debtor's only other assets were dated furniture, a desktop computer, and telephones.  The Debtor disposed of these items when the Debtor ceased operations.  (Trustee Fact Statement ¶ 16.)

changed much into 2021 as the Debtor could not book vacations – which would have decreased the total outstanding credits – during the pandemic.

Based on foregoing, the Debtor was insolvent when the Transfers were made.[11]

## C.    The Preference Claim

Count III seeks avoidance and recovery of the 2021 Transfers as preferences under section 547 of the Bankruptcy Code.  However, the preference claim was made as an alternative to the fraudulent transfer claim to the extent the Court found that the 2021 Transfers repaid valid obligations owed to the Defendants.  (Complaint ¶ 38 ("To the extent that any of the Defendants were owed money by the Debtor for unpaid services rendered prior to December 31, 2021, then the [2021 Transfers] would have been made to insiders on account of antecedent indebtedness."); *see also* Trustee Brief at 17 ("Assuming arguendo that any conceivable consideration exists for the Transfers – which is not the case –[] the Insider Transfers in the aggregate amount of $63,000 should be avoided as preferences pursuant to Section 547 of the Bankruptcy Code.").)[12]

Since the Court is granting summary judgment with respect to the 2021 Transfers as constructive fraudulent transfers, it need not address the Trustee's alternative theory that such transfers were preferences.

## D.    Joint and Several Liability

The Trustee asserts that the Defendants should be held jointly and severally liable for the judgment arising from the avoidance of the Transfers.  (Trustee Brief at 18-19.)

---

[11]    The Debtor does not argue otherwise in the Defendants Brief or Defendants Fact Statement.

[12]    Count III of the Complaint seeks avoidance of the 2021 Transfers, but the Trustee Brief includes certain of the 2020 Transfers as part of the preference claim.  None of the 2020 Transfers will be deemed included in Count III absent amendment to the Complaint.

Some courts outside of this District have ruled that a bankruptcy court has discretion to impose joint and several liability on a fraudulent transfer claim. *See 718 Arch St. Assocs., Ltd. v. Blatstein* (*In re Blatstein*), 260 B.R. 698, 720-21 (E.D. Pa. 2001) ("[J]oint and several liability is an available remedy in fraudulent transfer cases. Still, the decision to impose joint and several liability does fall within the bankruptcy court's discretionary authority."); *West v. Seiffert* (*In re Houston Drywall, Inc.*), Adv. P. No. 06-03415, 2008 WL 2754526, at *29 n.36 (Bankr. S.D. Tex. July 10, 2008) (same); *but see Shamis v. Ambassador Factors Corp.*, No. 95 Civ. 9818 (RWS), 2001 WL 25720, at *7 (S.D.N.Y. Jan. 10, 2001) ("[T]here is a dearth of legal support for the imposition of joint and several liability between transferors and transferees in a fraudulent conveyance."); *Bucki v. Singleton* (*In re Cardon Realty Corp.*), 146 B.R. 72, 81 (Bankr. W.D.N.Y. 1992) (denying summary judgment on the issue of joint and several liability because the movant had not provided, and the court had not found, any authority for such relief in fraudulent conveyance cases). The imposition of joint and several liability for a fraudulent transfer might be appropriate against a general partner who would otherwise be jointly and severally liable under state partnership law, *see Mason v. RJK Investors* (*In re Klarchek*), 509 B.R. 175, 187 (Bankr. N.D. Ill. 2014), where parties were involved in a scheme to defraud creditors, *see Sweeney, Cohn, Stahl & Vaccaro v. Kane*, 6 A.D.3d 72, 79 (N.Y. App. Div.), *leave to appeal dismissed*, 821 N.E.2d 965 (N.Y. 2004); *Farm Stores, Inc. v. Sch. Feeding Corp.*, 102 A.D.2d 249, 256 (N.Y. App. Div. 1984), *aff'd*, 479 N.E.2d 222 (N.Y. 1985), or where a transfer was made into a joint bank account held by multiple individuals. *See Lichtenstein v. Buttery* (*In re Comput. Personalities Sys., Inc.*), Nos. 01-14231, 01-1017 (DWS), 2002 WL 31988134, at *7 (Bankr. E.D. Pa. Dec. 23, 2002).

Assuming that the Court may impose joint and several liability on fraudulent transfer claims, the Trustee has failed to provide a valid reason as to why such liability should apply here. Only the constructive fraudulent transfer claims (and not the intentional fraudulent transfer claims) are subject to this Motion, the Transfers (except for the transfers to the taxing authorities) were made into each individual Defendant's bank account, and each Transfer should generally be evaluated as a separate transaction. *Maxus Liquidating Tr. v. YPF S.A.* (*In re Maxus Energy Corp.*), 641 B.R. 467, 531 (Bankr. D. Del. 2022) ("In general, fraudulent transfer law requires each transfer to be evaluated as a separate transaction.") (quoting *Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 254-55 (S.D.N.Y. 2006)) (internal quotation marks and alteration omitted). Thus, the Trustee must look to the specific transferee of the avoided Transfer for recovery. *See* 11 U.S.C. § 550(a).

Instead, the Trustee argues that N.Y. Bus. Corp. Law ("N.Y. BCL") §§ 719(a) and 510(a) (McKinney 2024) support the imposition of joint and several liability. N.Y. BCL § 719(a) "creates a cause of action against members of the board of directors of a corporation who authorize a dividend in contravention of" N.Y. BCL § 510. *Atlanta Shipping Corp. v. Chem. Bank*, 631 F. Supp. 335, 349 (S.D.N.Y. 1986), *aff'd*, 818 F.2d 240 (2d Cir. 1987). N.Y. BCL § 510(a), in turn, "prohibits a corporation from declaring or paying a dividend to shareholders if the corporation is insolvent or would thereby be rendered insolvent." *Atlanta Shipping Corp.*, 631 F. Supp. at 349.

N.Y. BCL §§ 719(a) and 510(a) have no application to the claims asserted here. The Complaint does not allege that the Defendants were directors or were involved in a process to authorize dividends. *Atlanta Shipping Corp.*, 631 F. Supp. at 349 ("By its own terms, [N.Y. BCL § 719(a)] applies only 'to directors of a corporation who vote for or

concur in' the prohibited transaction.") (quoting N.Y. BCL § 719(a)).  Indeed, the

Complaint does not allege a claim under any specific section of the N.Y. BCL.  Therefore,

the Trustee may not import the joint-and-several-liability framework of N.Y. BCL §

719(a) to her fraudulent transfer claims.  *See Planned Consumer Mktg., Inc. v. Coats &*

*Clark, Inc.*, 127 A.D.2d 355, 369 (N.Y. App. Div. 1987) ("Even if petitioner were the

proper party to bring an action under section 719, a further substantive problem with

this cause of action is that section 719 permits a corporation to bring an action to hold

directors personally liable for their misconduct and does not authorize an action to set

aside unlawful conveyances or transfers of corporate assets."), *aff'd*, 522 N.E.2d 30

(N.Y. 1988).

## <u>CONCLUSION</u>

For the reasons stated, the Court GRANTS summary judgment in favor of the

Trustee on her claim to avoid and recover as constructive fraudulent transfers under 11

U.S.C. § 548(a)(1)(B), N.Y. DCL § 274(a), and 11 U.S.C. § 550(a) as follows:

- The 2021 Transfers totaling $45,000 are avoided and recoverable against the

  Defendants in the following amounts: (i) Linda Heinemann: $15,000, (ii) Myrna

  Raboy: $15,000, and (iii) Josephine Mundy: $15,000.

- One-half of the 2020 Transfers totaling $22,500 are avoided and recoverable

  against the Defendants in the following amounts: (i) Linda Heinemann: $7,500,

  (ii) Myrna Raboy: $7,500, and (iii) Josephine Mundy: $7,500.  The Trustee's

  Motion is DENIED with respect to the other half of the 2020 Transfers

  constituting salary payments.

The Trustee's request for summary judgment on her claim to avoid and recover the 2021

Transfers as preferences under 11 U.S.C. §§ 547 and 550(a) is DENIED as moot.  The

Trustee's request for a finding of joint and several liability among the Defendants is DENIED.

The Trustee shall submit an Order on notice pursuant to Local Bankruptcy Rule 9074-1 consistent with this Memorandum Decision.  The parties shall meet and confer about the disposition of the remaining claims in this action and contact chambers to schedule a status conference with the Court.

/s/ Kyu Y. Paek

_____

**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**

**Dated: January 6, 2025**
**Poughkeepsie, New York**

